Louis P. McFadden, Jr. (LPM-0798)
A Professional Corporation
2106 New Road, Suite F-4
Linwood, NJ 08221
(609) 601-2330
Attorney for Plaintiff

---

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
AT CAMDEN

---

| | |
|---|---|
| CHESTER MITCHELL,<br>        Plaintiff,<br><br>V.<br>1) TRUMP PLAZA ASSOCIATES t/a<br>TRUMP PLAZA HOTEL & CASINO,<br>2) JOHN DOE(S), casino owners,<br>   operators, managers, et als,<br>        Defendants. | Civil Case No.<br><br><br><br><br><br><br><br>COMPLAINT AND JURY DEMAND |

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction of this action by virtue of 29 U.S.C. §2617(a)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## PARTIES

1. Plaintiff, Chester Mitchell, is an individual residing at 1020 Ocean Heights Ave., Egg Harbor Township, New Jersey, 08205.

2. Defendant, Trump Plaza Associates t/a Trump Plaza Hotel & Casino ("Trump"), is a hotel and casino doing business at The Boardwalk at Mississippi Avenue, Atlantic City, New Jersey, 08401.

3. Trump is an "employer" within the meaning of 29 U.S.C. §2611(4)(A).

4. John Doe(s), casino owner, operator, manager or other legal entity who has the power to control the management of the defendant's casino.

## COUNT TWO - UNLAWFUL RETALIATION

1. At all relevant times herein, the plaintiff, Chester Mitchell, was a resident of 1020 Ocean Heights Avenue, Egg Harbor Township, in the County of Atlantic and State of New Jersey.

2. At all relevant times herein, the defendant, Trump Plaza Hotel & Casino (hereinafter referred to as "Casino"), was a hotel and casino doing business at Mississippi and The Boardwalk, Atlantic City, County of Atlantic and State of New Jersey.

3. At all relevant times herein, the defendant(s) John Doe(s), were the owners, operators, managers and/or individuals who had the power to control the managerial decisions of the defendant's casino operation.

4. The plaintiff worked for the Casino in the position of floorperson and had been employed by the Casino since August 17, 1987 without any employment accommodation for his physical handicap.

5. During the plaintiff's career working in the Casino, he performed his job in a reasonable and satisfactory manner meeting the reasonable expectations of his employer.

6. At all times relevant herein, the plaintiff suffered from diabetes and diabetic neuropathy, but has always been able to perform the essential functions of his job duties. The plaintiff's physical handicap made it difficult for him to walk, especially over a variety of different surfaces, gradients and steps.

7. On or about September 11, 2006, the plaintiff requested an employment accommodation for a parking permit that would allow him to park in the parking garage that is connected to the Trump Plaza Hotel and Casino. Without the requested

2

accommodation, the plaintiff was required to park at a remote location and ride a shuttle bus to the Trump Plaza. The remote parking location required the plaintiff to walk over a variety of different surfaces, gradients and steps which exacerbated his medical condition and created increased risk of injury to him.

8. On September 11, 2006, the Casino Diversity and Equal Opportunity Affairs Manager, Joyce A Pratt, requested the plaintiff's attending physician, Dr. Jeffrey Pollock, M.D. to complete a physician's certification in response to plaintiff's request for the parking accommodation.

9. In support of the requested parking accommodation, Dr. Pollock provided a physician's certification to the Casino that recommended the parking accommodation in order to minimize the distance that plaintiff would be required to walk.

10. Dr. Pollock completed the physician certification indicating that the plaintiff was an insulin dependent diabetic and suffered from diabetic neuropathy that affected his walking and standing for long periods of time.

11. On or about September 13, 2006, Dr. Pollock returned the completed physician certification to the Casino and recommended that the plaintiff be allowed to "minimize walking long distances and allow to park as per handicap protocol."

12. On September 25, 2006, the Casino sent a letter to plaintiff that proposed to remove the plaintiff from his floorperson position and allow him to apply for other open job positions at any of the defendant's Atlantic City properties, but offered no guarantee that he would be rehired in any position.

13. On September 29, 2006, the Casino placed the plaintiff out of work indefinitely on "investigative suspension" without pay for "medical reasons" pursuant to a "Disciplinary Action Notice" of the same date.

14. On October 12, 2006, Dr. Pollock's letter dated October 6, 2006 was delivered to the Casino. The letter indicated that Dr. Pollock's physician certification

was never intended to jeopardize the plaintiff's job position and clarified that it was Dr. Pollock's opinion that the plaintiff was physically able to perform his job duties without limitation.

15. On the same date of October 12, 2006, the Casino received a letter of representation from the plaintiff's attorney enclosing a copy of Dr. Pollock's letter of October 6, 2006 and requesting that the plaintiff be immediately reinstated to his floorperson position and returned to work without loss of pay, seniority or other benefit that he enjoyed prior to his suspension.

16. By letter to plaintiff's counsel dated October 12, 2006, the Vice President of Legal Affairs for the Casino, Loretta I. Pickus, offered to return the plaintiff to work in his position as a floorperson upon the condition that he accept a written warning for an improper medical accommodation request.

17. The Casino's letter of October 12, 2006 from Pickus to McFadden notified the plaintiff of the Casino's ultimatum, which was for the plaintiff to return to his position as floorperson and accept the proposed disciplinary action, or be fired.

18. The plaintiff returned to work for the Casino on November 17, 2006 after being out of work for thirty-five (35) days. On November 22, 2006, plaintiff was issued a "Disciplinary Action Notice" for "misconduct" and for "violation of rules/procedures" based upon his presenting a "false claim of medical need in an attempt to obtain an on site parking accommodation." The plaintiff filed an in-house grievance to challenge the action.

19. The Disciplinary Action Notice was the first such notice that plaintiff received in his nineteen (19) years of service to the Casino.

20. On January 11, 2007, the plaintiff was notified by letter of same date from the Director of Employee Relations for the Casino, Cheryl M. Brantley, that further investigation of the plaintiff's discipline resulted in the Casino upholding the disciplinary action.

21. The Casino knew, or should have known, that the plaintiff had a statutory right to request an accommodation for his physical handicap by requesting a parking accommodation.

22. The Casino failed to engage the plaintiff, or his representative, in any meaningful or reasonable interactive process that addressed the plaintiff's request for accommodation.

23. The defendants refused to offer the plaintiff any reasonable accommodation.

24. In direct response to the plaintiff's request for a parking accommodation based upon his physical handicap, the defendants took direct and immediate retaliatory action that was motivated by an unlawful intention to discourage, intimidate, and coerce the plaintiff, and others, from asserting their civil and statutory rights pursuant to the Americans with Disabilities Act and the New Jersey Law Against Discrimination.

25. The retaliation by the Casino against the plaintiff included, suspending him from employment without pay, threatening to remove him from the floorperson position and reposition him to a lower paying job, threatening to terminate his employment, and issuing a Disciplinary Action Notice indicating that he was dishonest and untruthful by making "false" claims."

26. As a direct and proximate result of the retaliatory action by the Casino toward the plaintiff, the plaintiff suffered loss of income, the emotional distress and anxiety of the uncertainty of employment, and the pain, humiliation and embarrassment commonly associated with victims of such unlawful discrimination.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for the appropriate injunctive relief, compensatory damages, punitive damages, attorney's fees and costs and such additional relief as the Court deems appropriate.

## COUNT TWO - NEW JERSEY LAW AGAINST DISCRIMINATION

1.   The allegations set forth in Count One, Paragraphs one through twenty-five are incorporated as if fully set forth herein.

2.   The aforesaid actions by the defendants were taken in retaliation for the plaintiff's attempts to assert his rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12.

3.   As a direct and proximate result of the retaliatory action by the Casino toward the plaintiff, the plaintiff suffered loss of income, the emotional distress and anxiety of the uncertainty of employment, and the pain, humiliation and embarrassment commonly associated with victims of such unlawful discrimination.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, for the appropriate injunctive relief, compensatory damages, punitive damages, attorney's fees and costs and such additional relief as the Court deems appropriate.

### *DEMAND FOR JURY*

Plaintiff hereby demands a trial by jury as to all issues.

LOUIS P. MCFADDEN, JR., P.C.

Dated: 9/12/08

By: Louis P. McFadden, Jr.
Attorney for Plaintiff

6